Allen, P.
The record in this case nowhere states the facts proved, or all the evidence offered upon the trial. Each bill of exceptions sets out only so much of the testimony as was necessary to show the relevancy of the question raised and decided by the court; and the correctness of the "rulings of the court- upon the isolated questions is the only matter for consideration here. Erom the bill of exceptions first in order, numbered second in the transcript of the record, it appears, that after the accused had been permitted to withdraw the plea of not guilty, theretoftíre pleaded, he moved to quash the indictment upon the ground that he had not been sufficiently and legally examined by a properly constituted examining court, in this: that R. D. Sanxay one of said court, had acted as coroner by virtue of his authority as a justice of the peace in and for the city of Bichmond, and so had disqualified himself from sitting as one of the justices upon the said supposed examining court. And in aid of his motion, he offered in evidence the record.of said examining court, from which it seems that on the second day of the court, and the court-having fully heard the evidence, .the prisoner moved the court that further proceedings in the case should be discontinued, because B. D. Sanxay, one of the sitting justices in the case, acted as a coroner in the case; which motion was overruled. The prisoner thereupon *549 offered his affidavit alleging that after his arrest, and during his confinement in the old market in the city of [Richmond, a person represented to be E. D. Sanxay, an alderman of said "city, entered the room in which the affiant was confined, in a great hurry and in a very excited manner, and made the remark also in an excited manner, that the deceased E. E. Dixon, had been shot with a copper ball, and that it showed how determined thé prisoner was to take the life of the deceased; and made other remarks of a similar character, indicating a very decided opinion of the guilt of the ¡affiant. Also, that affiant had been informed and believed that E. D. Sanxay is the acting coroner of said city, who presided at the inquest on the body of the deceased, and signed the verdict rendered by the jury in the ease. And that he was informed and believed that the said E. D. Sanxay was one of the court then sitting on the bench to try the case then pending. And also in support of his motion, he offered the record of the finding of the coroner’s jury. The inquest appears to be certified and signed by Eichard D. Sanxay, J. P., acting as coroner. Upon this testimony the court of Hustings of said city overruled the motion to quash the indictment, and the accused excepted.
After the motion to quash the indictment was so overruled, the accused as it appears by the bill 'of exceptions numbered three in the transcript of the record, tendered two pleas 'in abatement, the first, alleging that said E. D. Sanxay, one of the five justices who sat upon the examining court, had formed and expressed a fixed opinion of his guilt, &c. The second that he had not been legally examined because the said E. D- Sanxay, one of the five justices, had acted as coroner, &c. Which pleas the court upon motion of the commonwealth rejected; to which decision the accused *550 excepted. The same questions were raised by each exception and they may be considered together.
The constitution and functions of the examining court are regulated and prescribed by the Code of 1860, ch. 205. It is in effect- nothing more than a more formal examination and inquiry into the facts than could be made by a single justice sitting generally alone, without time to examine carefully, or the aid of counsel to assist his deliberations. Under such circumstances he may err (supposing the facts to be undisputed) upon the question whether in law they malee out a felony; or he may be mistaken as to the facts. As an additional safeguard for the liberty and protection of the accused, tlie examining court is interposed. It must be satisfied that there is a corpus delicti, that a felony has been committed, a proposition in regard to which they can have the benefit of consultation and argument. If satisfied on that point, and that there is probable cause to charge the accused therewith, he is to be remanded for trial. If entitled to bail they may bail him. But if it appeal’ to the court, that there is not probable cause for charging the accused with the offence he shall be discharged. And an effect is given to such order of discharge which a discharge by a magistrate does not possess; the accused shall not thereafter be questioned for the same offence. But when they remand, they pronounce no definitive sentence upon the question of the guilt of the accused. Their judgment on the questions of law or fact is not evidence on the trial, and can have no influence upon the result. There would seem to be therefore no more reason for entertaining a motion to quash an indictment by a challenge for favor as to a justice of the examining court, than there would be to a committing justice where there is no examining court. The examining court is peculiar to Yirginia. And no case has been produce d where such a motion has been made or sustained, on *551 account of favor in the committing magistrate. When the examining court has acted, its functions cease; the court is dissolved. No hill of exceptions can he taken to its decisions, for there is no mode provided for receiving them. The cause could not be sent back to the same court: anew court must be convened. If the challenge could be listened to, where is it to be made and when? If to the same court, who is to try it? Not the remaining justices in a court of five, for every act performed by such court must be the act of a court of five justices. The justice challenged must be the judge of his own competency in the case supposed. This would lead to scenes discreditable to the administration of justice. If some other tribunal is to determine the question upon evidence aliunde, the principle would apply to all inferior courts, and judgments which import verity when pronounced by a duly organized court having jurisdiction over the subject matter, would be set aside by matter not appearing in the record.
As to the constitution of the court itself, the 4-th see. of eh. 205, provides that the justice who committed or recognized the accused for examination shall not, without the consent of the accused entered of record, be one of the examining court. This is the only exception allowed or provided for by law; and the expression of one excludes all others in a court consisting of duly qualified and acting justices. The coroner does not fall within the letter of the statute and the court could not embrace him except by assuming legislative power. If it were important it might perhaps be shown that he does not fall within the principle of the exception. The committing justice has examined the evidence. He has solemnly adjudged upon the sufficiency of the evidence to charge the accused with the offence. The examining court is to enquire into the same question; and it was therefore provided, that the committing magistrate who *552 has passed judicially on the very question, should not compose one of the examining court, unless the accused consents. The duties of the coroner are judicial.' He •conducts the inquisition; but the finding is the act of the jury, they are to enquire into the material circumstances of the death of the deceased, and if they find he came to his death by unlawful violence, who were guilty thereof.- The coroner is to return the inquisition to the county court, and recognize such witnesses as he thinks proper to appear and testify at such court, when it sits for the examination of the accused. And if the person charged by the inquest be not in custody, he may for his apprehension issue process in the same manner as a justice;, such warrant to be returned before a justice who examines and commits of not as in other cases.
The coroner does not pass judicially upon the question whether the evidence sufficiently charges the accused with the offence. He is committed judicially to no such opinion, and may in fact have made up no definite opinion or have come to a different conclusion from that at which the jury have arrived. I think upon all the grounds insisted upon here, the court below did right in overruling the motion to quash the indictment, and in rejecting the two pleas in abatement tendered by the accused. .
The fourth bill of exceptions, after setting out the testimony of a witness who made the post mortem examination of the body of the deceased, and of several other witnesses who detailed the occurrences as remembered by them respectively, which took place at the time and place of the homicide, gives the narrative of J. E. Goodwin, a witness of the commonwealth, of what had occurred on that occasion. In his evidence the witness said amongst other things, “ That the first he saw of the accused was whilst witness was waiting for the deceased, in his conversation with the officer, and he saw the *553 accused and Mr. Quarles (whom he knew by sight,) just before they came through the gate from the Capitol Square nearly opposite to Manassas Hall. The gate was revolved on the centre, and Quarles came out on the left side of the gate, and the accused came out on the right side; Quarles came out first, and witness does not recollect which way he went or what became of him, as he kept his eyes on the accused. Just before the accused came through the gate he drew a pistol from what appeared to the witness to be a new belt, and kept the pistol under- his coat or cloak as if to keep it out of view.” After describing the position of his cloak or coat, and stating some other circumstances that he observed, he states, “ That the accused came down to the flagging and called out, ‘Dixon, are you ready?’ or, ‘ are you ready Dixon?’ and then fired at him.” After a very special detail of the circumstances about the firing of the pistols and other incidents of the rencounter, he further says, “ Quarles may have passed in front of witness without his noticing him; does not remember that he said in his testimony before the examining court that Quarles passed down on the west side of 10th street from him. Witness has been very sick l’ecently, and does not remember half of his own business; that is he does not remember half the minutias of his own business; does not recollect what he said on his examination before the examining court.”
In the bill .of exceptions the narrative of this witness is continuous, without discrimination in chief, and on his cross examination. It appears sufficiently, however, .from the whole deposition as recorded, that the first statements quoted were made on his examination in chief, the last on his cross examination. And this is fully shown towards the close of the bill of exceptions and after the testimony of the witness T. H. Quarles is set forth. It is then stated that on the cross examina *554 tion of the witness Goodwin, and with a view of contradicting him, the counsel of the accused asked him whether he liad not said in his testimony before the examining court, that “ Mr. Quarles after coming out of the gate with the accused went down 10th street on the opposite side from that on which he Goodwin was standing,” and his reply was, that “he did not remember making any such statement.” Quarles was examined as a witness for the commonwealth, and stated in his testimony that after passing through the gate, “lie went on to the flagging, crossed Bank street on it, and passed down on the east side of 10th street.” On his cross examination he was asked by the counsel of the accused, whether the witness Goodwin did not in his testimony before the examining court make the statement above mentioned with reference to his Quarles’ movements after leaving the gate ? He replied that he was present at the examining court, and heard all the testimony, and that only one witness had mentioned him, but who that witness was he could not say; he had just seen Goodwin and could not say whether he was the witness or not.
The counsel for the accused then proposed to introduce evidence for the purpose of proving that only one witness at the examining court mentioned Quarles’ movements, and that that witness was the witness G oodwin; which' evidence they proposed to follow up by asking Quarles if the witness who spoke of him at the examining court did not, in his examination, say that he, Quarles, after coming out of the Capitol gate with the accused, went down 10th street on the side opposite to that on which the said witness stood. To the introduction of which evidence the Attorney for the Commonwealth objected, and the court sustained the objection, and refused to allow such evidence to be given to the jury: to which decision the prisoner excepted.
*555 From this synopsis of the material parts of the bill of exceptions, it is somewhat uncertain what was the precise proposition the court intended to decide. Whether it rejected the testimony because it was not competent, after the foundation had been laid as aforesaid by the question propounded to the witness Goodwin and his answer that he did not remember as aforesaid, to prove by other witnesses what he did say, so as to discredit his evidence given on his examination in chief, by showing either a want of veracity or a defective memory; or whether supposing the proof would be proper if Quarles could have identified him as the witness who mentioned his movements, it was irregular to connect Quarles’ testimony as to what the only witness who mentioned his movements did say on the former examination, with the testimony of other witnesses, to prove that Goodwin was that witness who in his examination at the examining court mentioned Quarles’ movements, so as to identify him, upon the ground that such additional testimony was secondary or not the best attainable evidence to prove the disputed fact.
As the witness Quarles had been asked on his cross-examination, whether Goodwin did not, in his examination before the examining court, make the statement aforesaid with reference to Quarles’ movements* after leaving the gate, and no objection seems to have been made to the inquiry, it is probable the. decision of the court was founded on the latter objection. However that may be, if the testimony was improper on either ground it should have been rejected; if legal the accused was deprived of the benefit of it by the decision of the court. The stress of the argument here on the part of the commonwealth has been rested on the first ground, that the evidence was incompetent; that the matter in regard to which it was attempted to contradict the witness was collateral to the real issue in the cause. *556 That the movements of the witness Quarles had no connection with the issue the jury were sworn to try, and that whether he passed down on one side or the other of 10th street after leaving the capitol gate, could not according to the testimony set forth, have had any imaginable influence upon the transaction between the parties engaged in the contest.
It is a well settled rule, found in all the text writers upon evidence, that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And if a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but it is conclusive against him.- 1 Greenl. Evidence § 449. The rule was recognized, and the reason stated why his answer cannot be contradicted in the case of Charlton v. Unis, 4 Gratt. 58; where it is said this would be unjust to the witness and the party introducing him; for though every witness may be supposed to come prepared to sustain the truth of his testimony given on the trial, he cannot be expected to come prepared to prove the truth of every collateral statement he may have made on another occasion.
It was held also in-the same case, that it is competent to impeach the credit of a witness by proof that he has made statements inconsistent with the testimony given on the trial. And accordingly we find it laid down in Greenleaf, ubi siupra, that it is not irrelevant to inquire of the witness whether he has not on some former occasion given a different account of a matter of fact to which he has already testified, in order to lay a foundation for impeaching his testimony by contradicting it. These expressions in the opinion and authority referred to “the testimony given on the trial” “to which he has *557 already testified,” point out the distinction between collateral matter introduced upon the cross-examination, to. lay a foundation for impeaching his testimony by contradicting the witness, and matter which he has testified to in his examination in chief, introduced by himself, and stated to the jury as part of his" own narrative of the transaction.
In the case referred to from Grattan the plaintiff having read the deposition of a witness, the defendant to discredit him, introduced an affidavit made by the witness a short time before the institution of the suit, stating various matters; and then introduced evidence contradicting one of the statements contained in the affidavit, thereby to discredit the witness by showing a want of memory or of veracity in respect to that statement. This was held to be improper.
Applying those principles to this case, if the witness Goodwin had not referred to the movements of .Quarles in his testimony in chief, but if this had been brought out upon cross-examination, and shown to be collateral or irrelevant to the issue, his answer could not have been contradicted by the p^rty who asked the question, but would have been conclusive against him. But that was not the case here. On his examination in chief he said that he saw the accused and Quarles whom he knew by sight, just before they came through the gate from the Capitol Square nearly opposite' to Manassas Hall. The gate was revolved on the centre and Quarles came out on the left side of the gate, and the accused came out on the right side. Quarles came out first and witness did not recollect which way he went or what became of him, as he kept his eyes on the accused: and he then proceeds to detail the circumstances which in their nature were calculated to occupy all of his attention. This statement necessarily tended to give weight to his details of- the main transaction; to show that his atten *558 tion was so closely fixed upon them, his mind so preoccupied by the scenes of the tragedy enacting before him, that incidental or collateral matter passed unheeded before him. In this point of view the statement becomes incorporated with the main narrative of events, and is an essential part of his testimony. It does not fall within the reason assigned, that the answer of a witness to collateral matter cannot be contradicted by the party asking it, because it would be unjust to expect the witness to come, prepared to prove the truth of every collateral statement. As he has embodied it himself in his own narrative of the transactions he must be prepared to sustain it. lie cannot complain of any surprise at the effort to discredit him with reference to such a statement, by showing that he has made contradictory statements on other occasions; nor does his reply that he did not remember having made such statements, when asked if he had not made such contradictory statements to lay a foundation for proving them, change the aspect of the case. If the party were precluded by such reply from showing that he made such contradictory statements the jury wpuld be left in doubt whether they ever were made. ■
It is not for the court to say what weight such testimony should have upon the jury, whether it tended, to weaken his testimony by showing a defect of memory, or to discredit it by showing that he liad made a false statement with a view that his testimony upon other matters should make a deeper impression. I think therefore that it was competent for the accused after asking the witness, Goodwin, upon his cross examination, and with a view of contradicting him, whether he had not said in his testimony before the examining court, that Hr. Quarles, after coming out of the gate with the accused went down 10th street on the opposite side from that on which he, Goodwin, was standing; and if he *559 denied having made such a statement, or said that he did not remember snaking it, to inti’oduce evidence to prove that he did make such a statement, to discredit the witness by impeaching his veracity o;r showing a defective memory, if or do I think thei’e is anything in the objection as to the mode in which it was attempted to prove such contradictory statement. It is not a question as to the quality of the testimony when compared with some other evidence of a superior degree; as an attempt to prove the contents of a wiiting without accounting for its nosi production, &c.; or where from the nature of the transaction it appears there is better evidence of the fact which is withheld or suppressed : thus raising a suspicion of fraud. The objection here related to the measure and quantity of the evidence by which it was attempted to establish the fact; and whether the whole matter could be proved by Quarles alone, or by his testimony as to what a witness said in the examining court connected with the testimony of other witnesses to prove who that witness was, is immaterial. The necessity of resorting to such additional proof may impair the force of the testimony to establish the fact, but the testimony itself is admissible to be judged of by those whose province alone it is to weigh it.
I think, therefore, that the court erred, to the prejudice of the accused, in excluding the testimosiy he proposed to introduce for the purpose of contradicting and so discrediting the witness, Goodwin, as "set forth in the fourth bill of exceptions; and that for such error the judgment must be reversed, and the verdict of the jury set aside; and the cause remanded for a new trial of the accused upon the indictment.
This conclusion renders it unnecessary to express any opinion upon the propriety of the decisions of the court below upon the motion for continuance on account *560 of the absence of John T. Clark, as disclosed in the first bill of exceptions; or upon the application for a new trial upon the ground of after discovered testimony as set for.th in the fifth bill of exceptions. The same questions may not arise upon the new trial rendered necessary by the judgment of the court upon the previous bills of exceptions; nor could they in fact arise presenting precisely-the same circumstances.
Daniel and Robertson Js. concurred in the opinion of the President, except that they did not think it important whether the statement of the witness Good-win came out on his examination in chief or on cross-examination.
Monguee J. concurred in the. opinion, except that he thought that the statement was relevant testimony.
Judgment eeveesed.